| | | | | |
|---|---|---|---|---|
| Minute Order Form (06/97) | | | | |

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6408 | **DATE** | 6/17/2003 |
| **CASE TITLE** | RENALDO HAYWOOD vs. EVERGREEN MOTOR CARS, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment [33-1] is granted. Plaintiff's motions to strike defendant's affidavits [52-1] and for summary judgment [51-1] are denied. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | JUN 18 2003 | |
| ✓ | Notices mailed by judge's staff. | | date docketed | 59 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/17/2003 | |
| CB | courtroom deputy's initials | 03 JUN 17 PM 3:47 Date/time received in central Clerk's Office | date mailed notice PW mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RENALDO HAYWOOD, )
)
    Plaintiff, ) No. 02 C 6408
)
v. ) Suzanne B. Conlon, Judge
)
EVERGREEN MOTOR CARS, INC. )
d/b/a BMW OF ORLAND PARK, )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Renaldo Haywood ("Haywood") sues Evergreen Motor Cars, Inc. d/b/a BMW of Orland Park ("BMW") for race discrimination and harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981 and common law intentional infliction of emotional distress. Haywood's retaliation claims were previously dismissed. The parties move for summary judgment pursuant to Fed. R. Civ. P. 56. In addition, Haywood moves to strike three affidavits offered by BMW in support of its summary judgment motion.

## BACKGROUND

### I. Evidence

Evidence submitted at the summary judgment stage must be admissible at trial. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). Therefore, the court must first determine the admissibility of the evidence presented by the parties before reaching the merits of the summary judgment motions.

### A. Haywood's Motion to Strike BMW's Affidavits

In support of its summary judgment motion, BMW offers affidavits from general manager Scott Boomsma, general sales manager Jon Dokmo and sales manager Guy Accettura. Haywood moves to strike the three affidavits in their entirety, claiming they contradict the affiants' earlier deposition testimony. "As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn

1



testimony." *Buckner v. Sam's Club, Inc.*, 75 F.3d 290 292 (7th Cir. 1996). However, Haywood fails to demonstrate that the affiants contradicted their prior deposition testimony.

As an initial matter, Haywood points to only one paragraph in Boomsma's 68 paragraph affidavit and three paragraphs in Accettura's 18 paragraph affidavit to support his broad objection. "[J]ust as the court is not required to 'scour the record looking for factual disputes,' it is not required to scour the party's various submissions to piece together appropriate arguments." *Little v. Cox's Supermarkets, Inc.*, 71 F.3d 637, 641 (7th Cir. 1995), *quoting Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994)(internal citation omitted). Therefore, only Haywood's specific objections to Boomsma and Accettura's affidavits will be considered.

Boomsma attests that he "is familiar with BMW's policies regarding employee absences and tardiness." Boomsma Aff. at ¶ 13. According to Haywood, Boomsma contradicts his earlier deposition testimony that "[t]here is no exact policy" regarding employee absences and tardiness. Motion at 2, *citing* Boomsma Dep. at 106. Contrary to Haywood's contention, Boomsma testified during his deposition that "[t]here is no exact policy" regarding information to be included in employee counseling reports or "conversation confirmers." Boomsma Dep. at 101-106. Therefore, paragraph 13 of Boomsma's affidavit does not contradict his prior deposition testimony.

Nor does Accettura contradict his prior deposition testimony in paragraphs 16 through 18 of his affidavit. Accettura attests he immediately spoke to employee Michelle Dural about an offensive e-mail after Haywood informed him that Dural opened the e-mail in a customer's presence. Accettura Aff. at ¶¶ 16-18. According to Haywood, Accettura's affidavit must be stricken because it contradicts Dural's deposition testimony. Motion at 3. Haywood fails to cite any legal authority supporting his position. To the contrary, BMW may offer Accettura's affidavit to contradict Dural's deposition testimony. *Escatel v. Cushman*, No. 96 C 0399, 1997 WL 159468, at *3 (N.D. Ill. March 27, 1997). Therefore, Haywood's motion to strike the three affidavits offered by BMW must be denied.

2

B.  **Local Rule 56.1**

Local Rule 56.1 requires the non-moving party to submit a response "to each numbered paragraph in the moving party's statement [of material facts], including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(A). All relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary material." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000).

Haywood's response to BMW's statement of facts fails to comply with Local Rule 56.1. Specifically, Haywood's responses to paragraphs 18, 19, 24, 44, 45, 59, 61-63, 70 and 95 of BMW's statement of facts fail to cite record evidence supporting his denial. Therefore, BMW's factual statements, if properly supported, are deemed admitted.

II.  **Facts**

All facts are undisputed unless otherwise noted. BMW hired Haywood, who is African-American, as a sales representative on July 30, 1999. Haywood has approximately 12 years experience as a sales representative. He does not have a college degree. At the time Haywood was hired, Boomsma was the general manager.

On March 27, 2001, BMW hired Dokmo as a sales manager with the understanding that he would become the general sales manager once the used car department was properly organized. Dokmo, who has a bachelor's degree from Valparaiso University, previously worked at Downers Grove Dodge as a used car sales manager and general sales manager. In June 2001, Dokmo was promoted to the general sales manager position at BMW.

During a sales meeting attended by the entire sales staff, Boomsma announced the sales manager job opening created by Dokmo's promotion. During or shortly after the meeting, four sales representatives expressed interest in the management position: Haywood, Lou Russo, Berto Soria and Accettura. Boomsma later discussed the four sales representatives with Dokmo. Boomsma considers experience, leadership, adherence to dealership policies and procedures,

3

organizational skills and salesmanship in making promotion decisions. According to Boomsma, managers must set a proper example for sales staff by following company policies and procedures.

BMW sales representatives are required to arrive at work, including mandatory Saturday morning sales meetings, on time. If a sales representative is going to be late, he or she must call a manager so that BMW can make arrangements to ensure the sales floor is properly staffed. When a manager determines that a sales representative is developing a pattern of arriving to work late, the manager verbally counsels the sales representative about tardiness. Managers issue written warnings for chronic tardiness.

Haywood was late for work and mandatory meetings at BMW. Haywood did not call a manager every time he was late. Haywood was counseled numerous times regarding his tardiness. On August 4, 2001, Haywood received a written warning for excessive tardiness after he arrived late for a mandatory Saturday morning sales meeting. Haywood often asks to leave the sales floor early when sales are slow.

In September 2001, Boomsma promoted Accettura to sales manager. According to Boomsma, he promoted Accettura because he possessed many of the qualities BMW looks for in a sales manager. Accettura has a bachelor's degree from the University of Hawaii, has approximately 23 years of management experience and has supervised up to 300 employees. As a sales representative, Accettura demonstrated leadership skills and dedication to the dealership by working extended hours. Accettura is a good-finisher, detail-oriented, even tempered and adheres to company policies and procedures. Accettura does not have any problems with punctuality.

According to Haywood, he was subjected to racially offensive comments on five or six occasions from July 20, 1999 to the present. Specifically, coworker Korey Bollnow said, "you know how Black folks do it," "you know how brothers do it" and "nappy head." On another occasion, Boomsma told Haywood to "get [his] black ass out of [his] office."

On May 9, 2002, Haywood and a customer saw a photograph of an African-American child in an aluminum container with the words "Ghetto Pool" on the computer screen of coworker

Michelle Dural. The next day, Haywood reported the photograph to Accettura. The parties dispute whether Accettura took any action in response to Haywood's complaint.

## DISCUSSION

### I. Standard of Review

On cross-motions for summary judgment, each movant must individually satisfy the requirements of Rule 56. *Equal Employment Opportunity Commission v. Admiral Maintenance Service, L.P.*, No. 97 C 2034, 1998 WL 102748, at * 6 (N.D. Ill. Feb. 26, 1998). Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (c); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the outcome may depend on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

### II. Discrimination Claims

Title VII prohibits an employer from discharging or otherwise discriminating against an employee in the terms, conditions or privileges of employment based on the employee's race. 42 U.S.C. § 2000e-2(a). Section 1981 similarly prohibits employment discrimination based on race. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 346 (7th Cir. 1999), *citing Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1034 (7th Cir. 1998). "While Section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Von Zukerstein v. Argonne National Laboratory*, 984 F.2d 1467, 1472

(7th Cir. 1993). In order to prove a case of discrimination under Title VII or § 1981, Haywood may utilize either the direct or indirect method of proof. *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998).

A. **Direct Method**

Under the direct method, Haywood may offer either direct or circumstantial evidence. Direct evidence is evidence that, if believed by the trier of fact, would prove the fact in question "without reliance on inference or presumption." *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001), *quoting Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999). In other words, direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2002). Haywood fails to offer any evidence that a BMW manager admitted taking an adverse action against him because of his race.

Absent direct evidence, a plaintiff may still proceed under the direct method by presenting circumstantial evidence of illegal discrimination. *Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003). There are three types of circumstantial evidence under the direct approach: (1) "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn"; (2) a showing that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the plaintiff was qualified, but was passed over in favor of a person outside of the protected class, and the employer's stated reason for the decision is "unworthy of belief, a mere pretext for discrimination." *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). The third type of circumstantial evidence is "substantially the same" as the evidence required under the indirect burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Huff v. UARCO, Inc.*, 122 F.3d 374, 380 (7th Cir. 1997). Haywood relies exclusively on the third type of circumstantial evidence to establish his claims of race discrimination.

B.  **Indirect Method**

1.  **Failure to Promote**

In order to establish *prima facie* case of race discrimination based on a failure to promote, Haywood must show: (1) he belongs to a protected class; (2) he applied for and was qualified for the position sought; (3) he was rejected for that position; and (4) BMW promoted someone outside of his protected class who was not better qualified. *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003). BMW argues that Haywood cannot establish a *prima facie* case based on the promotions of Dokmo and Accettura.

BMW first contends Haywood cannot establish he was qualified for a management position. BMW considers experience, leadership, adherence to dealership policies and procedures, organizational skills and salesmanship in making promotion decisions. Although Haywood has enough experience for a management position, he lacks leadership, adherence to dealership policies and procedures, organizational skills and salesmanship. According to BMW, Haywood is not qualified for a management position because he fails to stay late, arrive early and come in during scheduled days off when necessary to accomplish goals and promote sales, fails to effectively prospect and follow-up on sales leads by telephone, mail, email and networking, leaves "loose ends" in sales transactions and has a history of tardiness. Haywood fails to properly dispute BMW's assessment of his qualifications. As a result, Haywood cannot establish he was qualified for a management position.

Even if Haywood could establish he was qualified, he fails to establish he was as qualified as Dokmo or Accettura. Indeed, Haywood does not even attempt to compare his qualifications with those of Dokmo and Accettura. In contrast, BMW points out that Dokmo and Accettura have college degrees whereas Haywood does not. Prior to working at BMW, Dokmo served as used car manager and general sales manager at Downers Grove Dodge. Accettura has approximately 23 years of management experience and has supervised up to 300 employees. As a sales representative, Accettura demonstrated leadership skills and dedication to the dealership by working extended hours. Accettura is a good-finisher, detail-oriented, even tempered and adheres to

7

company policies and procedures, including punctuality. Absent evidence that Haywood was as qualified as Dokmo or Accettura in experience, leadership, adherence to dealership policies and procedures, organizational skills and salesmanship, Haywood cannot establish a *prima facie* case of race discrimination based on BMW's promotion decisions.

## 2.     Disciplinary Action

Nor can Haywood establish a *prima facie* case of race discrimination based on BMW's written warnings for tardiness. In order to establish BMW singled him out for discipline because of his race, Haywood must show other similarly situated employees outside his protected class were treated more favorably. *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999). Although Haywood claims other tardy employees were not counseled, he fails to demonstrate he is similarly situated to these unnamed employees.

In order to establish he is similarly situated, Haywood must prove that the other employees "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue*, 219 F.3d at 617-18. Haywood fails to present evidence that the supervisors who issued him written warnings had an opportunity to write up other employees with the same record for tardiness and failed to do so. Absent evidence that he was similarly situated to the unnamed employees, Haywood cannot establish a *prima facie* case of race discrimination in connection with the written warnings for tardiness.

## 3.     Bonuses, Benefits and Training

In his response, Haywood claims "BMW discriminated and continues to discriminate against Plaintiff in the award of 'spiffs' or bonuses." Response at 3. Haywood further claims he "saw individuals with lower customer satisfaction scores and less satisfactory employment records or seniority receive benefits that were denied him." *Id.* at 7. Finally, Haywood claims a white salesman was sent to the adjoining Mercedes dealership for training by the owner of both dealerships. *Id.* at 8. However, Haywood fails to offer any evidentiary or legal support for his allegations in either his response or Local Rule 56.1 statement of facts. Haywood "cannot leave it

8

to this court to scour the record in search of factual or legal support for [his] claims." *Colburn v. Trustees. of Indiana Univ.*, 973 F.2d 581, 593 (7th Cir.1992). Under these circumstances, BMW's summary judgment motion must be granted on Haywood's bonus, benefits and training claims.

Alternatively, Haywood's denial of training claim is barred because it is not "like or reasonably related" to the allegations contained in his three discrimination charges. *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1996). Haywood's allegations of harassment and discrimination regarding promotional opportunities and bonuses are insufficient to encompass his claim of discriminatory training. *See Johnson v. Indopco, Inc.*, 834 F.Supp. 1039, 1042 (N.D. Ill. 1993)(claim for discriminatory denial of additional training outside the scope of charge alleging discriminatory failure to promote). Indeed, Haywood does not contend additional training was needed to qualify him for a promotion. Accordingly, Haywood's denial of training claim fails as a matter of law.

## II. Harassment Claim

"Title VII of the Civil Rights Act of 1964 prohibits an employer from engaging in racial harassment that creates a hostile or offensive working environment." *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir.1993). For a racially hostile work environment claim "to be actionable, it must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and to create an abusive working atmosphere." *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 885 (7th Cir. 1998), *quoting McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 479 (7th Cir .1996). Whether harassment is sufficiently severe or pervasive depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). The work environment cannot be described as hostile for purposes of Title VII unless a reasonable person would find it offensive and Haywood actually perceived it as hostile. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807 (7th Cir.2000). These standards "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher*

9

*v. City of Boca Raton*, 524 U.S. 775, 787 (1998), *citing Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998). A workplace must be "hellish" before it is actionable as a hostile environment. *Logan v. Kautex Textron North America*, 259 F.3d 635, 641 (7th Cir.2001).

Haywood cannot establish that harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. According to Haywood, he was subjected to five or six comments by a co-worker, one comment by Boomsma and one offensive e-mail opened in his presence over the last four years. *See Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995)("handful of comments spread over months" are not sufficiently severe or pervasive to constitute harassment). Based on the totality of circumstances, a reasonable jury could not conclude the alleged conduct was so severe or pervasive as to constitute an actionable hostile work environment.

### III. Intentional Infliction of Emotional Distress Claim

To establish a *prima facie* case of intentional infliction of emotional distress, Haywood must prove: (1) BMW engaged in extreme and outrageous conduct; (2) BMW knew or should have know its conduct would cause severe emotional distress; and (3) the conduct caused Haywood severe emotional distress. *McGrath v. Fahey*, 126 Ill.2d 78, 86, 533 N.E.2d 806, 809 (1998). BMW argues that Haywood cannot prove its conduct was extreme and outrageous. Haywood fails to address his intentional infliction of emotional distress claim in his response.

In order to establish extreme and outrageous conduct, Haywood must prove more than "mere insult, indignities, threats, annoyances, petty oppression or trivialities." *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 89, 360 N.E.2d 765, 767 (1997). "Rather, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 21, 607 N.E.2d 201, 211 (1992). The determination of whether a defendant's conduct is extreme and outrageous must be made on the facts of each particular case. *McGrath*, 126 Ill.2d at 90, 533 N.E.2d at 811. Construing all inferences in his favor, Haywood has not established that BMW's conduct was extreme and outrageous. The conduct complained about by Haywood, although rude and

10

inappropriate, cannot reasonably be considered extreme and outrageous. *See Piech v. Arthur Andersen & Co., S.C.*, 841 F.Supp. 825, 831 (N.D.Ill.1994)("The work setting contemplates a degree of teasing and taunting that in other circumstances might be considered cruel and outrageous"). As a result, Haywood cannot establish his intentional infliction of emotional distress claim.

Even if Haywood could establish BMW's conduct was extreme and outrageous, summary judgment must be granted. The Illinois Human Rights Act preempts tort claims that inextricably linked to allegations of harassment. *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 516, 687 N.E.2d 21, 22-23 (1997). Haywood's intentional infliction of emotional distress claim is based on the same factual allegations supporting his discrimination and harassment claims. Therefore, Haywood's intentional infliction of emotional distress claim fails as a matter of law.

## CONCLUSION

BMW is entitled to judgment as a matter of law on all claims advanced by Haywood.

June 17, 2003

ENTER:

Suzanne B. Conlon
United States District Judge